JONES, JUDGE:
The claimant, Ora V. Davis, 48 years of age, and a resident of Vemer, in Mingo County, sustained severe and permanent injuries when he fell from a bridge maintained by the respondent, Department of Highways, on Sunday, September 29, 1968, between 3:30 and 4:00 a.m. The claimant was employed as a buggy operator for the Princess Coal Company and he had worked as usual on the preceding day. The bridge in question spans the Guyandotte River, connecting Mingo and Logan Counties, and the claimant’s home was located approximately 1500 to 2000 feet from the south end of the bridge in Mingo County. The walkway along the eastern side of the bridge had been equipped with a protective wire mesh about 18 inches in height, this wire mesh having been attached to the steel girders supporting the main bridge and serving as a guard to separate pedestrian and vehicular traffic. However, the record shows that this wire mesh had fallen down along the entire length of the bridge, leaving an unobstructed portion of the walkway approximately two feet wide. There was a similar strip of wire mesh in place along the outside of the walkway with a pipe railing along the top of the wire mesh and another pipe railing about 18 inches above the first rail, except for several lengths of the top rail which were missing at the north end of the bridge. The wire mesh and the missing portion of the top guardrail both had been down for at least two or three months.
We have only the claimant’s version of what transpired immediately before and at the time he fell over the side of the bridge, no one else being astir at the early morning hour. The claimant’s description of the events leading up to his injuries are found in his testimony sub *50 stantially as follows: For several years he had been in the habit of rising during the night to read, or upon many occasions to dress and go for walks in the neighborhood. On the night in question, he awakened at about 3:00 to 3:30 a.m. and, after reading the newspaper, he started out for a walk. He walked slowly across the bridge and, after a few minutes on the other side, he started back across along the walkway. There was a pole light approximately 50 to 100 feet from that end of the bridge, and it was not a particularly dark night. The claimant was carrying a flashlight but he was not sure whether he was using it at the time. In any event, there seems no question that he could see the walkway and the wire mesh which he had observed on many previous occasions. Approximately 20 to 30 feet from the north end of the bridge, the claimant’s right foot caught in the strip of wire mesh which was lying flat on the walkway and in his words “When I started to make a step, it caught my toe in the wire and it had me fouled * * * *. When I started to fall, I reached to grab it (the top guardrail) and there was nothing there for me to grab.” He fell about 25 feet to the riverbank below and being unable to move himself, remained there until he was found about four hours later.
We are satisfied that the respondent knew or should have known that the detached wire mesh and missing guardrail created an unsafe and hazardous condition which might result in injury to persons using this walkway. However, no one had more knowledge of the danger presented by this failure of the respondent to keep the walkway in a safe condition than the claimant himself. He testified that in the interest of the safety of his own and other children using the walkway, he had nailed up portions of the wire mesh two or three times. He had walked along the walkway on many occasions when exactly the same hazards existed as did on the night of his injury. He had passed over the same area just minutes before. He could see where he was going, he knew that the wire mesh was lying along his path, and he had an unobstructed way about two feet in width. Even the wire may have been walked on without danger to the claimant if he had exercised proper precaution, as by the claimant’s admission the wire mesh was flat on the walkway at the place he fell. The claimant also had known for months that the top guardrail was down.
This man was badly hurt and his injuries are permanent. The Court cannot help being sympathetic concerning the claimant’s condition, *51 but it may only apply the law to the facts as it understands them. There can be no doubt that the claimant knew and recognized the hazards before him. Neither can there be any doubt in the Court’s opinion that the claimant did not exercise due diligence to avoid and save himself from injury, and that, in fact, his careless conduct was the proximate cause of his injuries.
After careful study of the record in this case and serious deliberation of the issues involved, which were ably briefed by counsel for both parties, the Court is of opinion that the claimant does not have a valid, legal claim against the respondent, and, therefore, this claim is disallowed.
Claim disallowed.